In the Matter of BARRY FEINSTEIN et al., as Trustees of City Employees Union, Local 237, International Brotherhood of Teamsters, Welfare Fund, Petitioners.

In the Matter of the NEW YORK COUNTY LAWYERS ASSOCIATION, Petitioner.

First Department, July 9, 1974.

*Guggenheimer & Untermyer,* attorneys for Trustees of City Employees Union, Local 237, International Brotherhood of Teamsters, Welfare Fund, petitioners.

*Copal Mintz* of counsel for New York County Lawyers Association, petitioner.

*Per Curiam.* Each applicant — one the corporate creature of a local bar association, the other a labor union — seeks our approval to function as a legal assistance corporation (Judiciary Law, § 495, subd. 5; 22 NYCRR Part 608, Rules of the Appellate Division) by furnishing prepaid legal services. The two proposed plans differ in several details, none pertinent to our consideration of the applications. The union's application is recent; the other has been before us for some time, consideration

thereof delayed because of proposed legislation on the subject then pending in the Legislature. The Legislature adjourned without acting on the matter, but, hopefully, that is not the last word on the possibility of further consideration. Regardless of whatever differences exist between the plans and the nature of their sponsors, one common factor stands out and provides the basis for denial of the applications: both such plans are — indeed, any such plan must be — basically programs in the nature of insurance. There is no provision in law which gives this court authority to supervise insurance schemes in respect of rates, nature and quality of services, and the numerous other factors necessary for administration in an area so affected with the public interest. Nor do we possess either the personnel or the expertise required for such activity on our part. The only presently existing agency apparently capable of this task is the Insurance Department, though possibly the Public Service Commission might be deemed a suitable administrative agency. However, neither at this time seems to possess the requisite statutory authority. In these circumstances we must deny the application.

This is not to say for one moment that the proposed programs would not promote the public welfare; indeed, such a reform is long overdue, but it should not take place in the manner proposed here. No such corporation, no matter how well intentioned its sponsors, should be self-supervising. The Legislature would do well, we suggest, to give further consideration to the entire matter. The Law Revision Commission is presently conducting an "immediate study" of section 495 in the light of newly apparent problems (see *Matter of Thom*, 42 A D 2d 353), and will likely consider the subject of prepaid legal services in connection therewith. But, absent a careful comprehensive statute addressed to the problem, to approve these applications in present circumstances would not be appropriate.

KUPFERMAN, J. (dissenting). While a program for prepaid legal services (sometimes hereinafter PLS) is not without problems, it is no solution to practice judicial abstinence.

Just one year ago, New York County Lawyers Association through Copal Mintz, Counsel, applied for approval pursuant to court rule 608.1 *et seq.* (22 NYCRR 608.1 *et seq.*) for the incorporation and organization of New York County Legal Services Corporation (Not-For-Profit Corporation Law, § 201, subd. [b], Type D) as a benevolent or charitable corporation.

A thorough analysis of the plan is not necessary for this dissent, but it appears to be well considered and conceived in

the dedication of the Bar, through one of the outstanding associations of lawyers, to the need for a "judicare" or "legalcare" system to match those in the health field lumped under the general heading of "Medicare". Nine outstanding New York City lawyers are to serve on the initial board of directors, and the administrator of the plan is to be Mary B. Tarcher, who for many years headed the civil division of the Legal Aid Society.

It provides "to persons of moderate income and moderate net worth, for an annual reasonable fee, plus minimal 'deductibles', legal services, as and when needed, through lawyers of their own choice who join the Plan as Participants." A lawyer participates by filing an agreement in "prescribed form" and paying a registration fee of $25 for the Plan Year. A subscriber pays $100 for the first year with an additional lesser fee to cover a spouse and minor children. There are a fee schedule,[1] exclusions and deductibles.

Whether the plan will continue beyond the plan year will depend on the experience thereunder.

Initially, objection came from the New York State Department of Insurance, which expected legislation in the recent New York State legislative session, that might cover the situation. That sounded like a simple solution. (See, e.g., Sen. Intro. 4887-A Cal. No. 1499 of 1973–1974 by Senator Dunne of Nassau County "To Amend the insurance law, in relation to legalcare insurance.") However, no legislation passed, not because of opposition to the PLS idea, but because of controversy between "closed" and "open" plans. The debate is on the question of whether the lawyer should be of a person's own choosing or one supplied by the organization involved.

Reams have been written on the subject, and it is now more than a decade since the question was raised in the United States Supreme Court in *NAACP* v. *Button* (371 U. S. 415), which was followed by *Railroad Trainmen* v. *Virginia Bar* (377 U. S. 1); *Mine Workers* v. *Illinois Bar Assn.* (389 U. S. 217); and more recently *United Transp. Union* v. *Michigan Bar* (401 U. S. 576).

Most recently, on June 10, the Association of the Bar of the City of New York conducted a symposium on "The Present

1. Our Court of Appeals has found fee schedules acceptable (*Lincoln Rochester Trust Co.* v. *Freeman*, 34 N Y 2d 1), as has the United States Circuit Court of Appeals for the 4th Circuit (*Goldfarb* v. *Virginia State Bar*, 497 F. 2d 1, revg. 355 F. Supp. 491), although the United States Department of Justice may take a dim view thereof. (See N. Y. L. J., May 10, 1974, p. 1 col. 5; 19 American Bar News, No. 5, p. 1, col. 3 [June, 1974].)

and Future of Prepaid Legal Services ''. The Monroe County Bar Association has proposed a pilot project for PLS in Rochester. See '' The Proposed Monroe Prepaid Legal Services Plan '' by Donald R. Adair, New York State Bar Journal (June, 1973) page 229. See also Gasperini & Schorr '' Prepaid Group Legal Services — Where We Are '', 45 N. Y. S. B. J. 69 (Feb. 1973).

The American Bar Association Journal in an editorial in the September 1973 issue (vol. 59, p. 1033) pointed out that the enactment of United States Senate bill No. 1423 amending the Labor Management Relations Act of 1947 to permit employer contributions as a fringe benefit through collective bargaining to jointly administered trust funds established for the purpose of defraying the costs of legal services, would give great impetus to prepaid legal services plans. See also Prepaid Legal Services — A Survey & Perspective, The Record — Association of the Bar (vol. 28, No. 8, Nov., 1973, p. 725), where Jules Bernstein makes the same prediction (p. 730).

This undoubtedly is the basis for the application by City Employees' Union Local 237, which plan has no insurance aspects and ought also to be approved. It requires a payment by a union member of a registration fee of $25 for each legal matter, which fee entitles the member to a total of $1,000 of legal services without additional charge during the course of a year. The member pays all costs over $1,000. This is a closed plan for the covered figure, and when reached, the member must '' cause to be designated another attorney not employed by the Prepaid Legal Services Section, to represent such Eligible Member in all pending and future matters.''

The State Department of Insurance has no objection to this proposed union plan. Its opposition to the plan of New York County Lawyers seems based on the contention that there is no fund (somewhat like a '' completion bond '' in business parlance) to assure legal services in the event of the need for a major expenditure of legal time in a covered matter (cf. major medical). The point is fairly taken and can be satisfied by this court conditioning approval of the plan on acceptance by the bar association itself of the completion responsibility. With more than 9,000 active members of the Bar of the State of New York on its membership rolls, New York County Lawyers Association should have no problem on that score.

Subdivision 5 of section 495 of the Judiciary Law provides that the restrictions in that section shall not apply '' to organizations organized for benevolent or charitable purposes, or for

the purpose of assisting persons without means in the pursuit of any civil remedy, whose existence, organization or incorporation may be approved by the appellate division of the supreme court of the department in which the principal office of such corporation or voluntary association may be located." While, with the proliferation of legal assistance corporations,[2] (those that aid the indigent and selected groups without fee), we have asked for legislative guidance with respect to section 495 (see *Matter of Thom* [*Lambda*], 42 A D 2d 353), we cannot avoid issues. True, the Court of Appeals indicated in the previous decision in the same *Matter of Thom* (33 N Y 2d 609, 610): " There may be and will undoubtedly arise in the future many applications on behalf of corporations which will not merit approval because of factors related to the responsibility of the sponsors, the method of financing, the scope of activities proposed, and still others not predictable or definable in advance, any or all of which may affect the public interest."

However, the reasons now given by the majority[3] for denying status to this PLS will not bear muster in view of the actual holding in *Matter of Thom*.

The debate concerning " open " and " closed " plans, see, e.g., " Group Legal Review ", National Consumer Center for Legal Services (vol. 1, No. 2, June, 1974); " Bar is accused of Thwarting Low-Cost Service Programs ", *N. Y. Times,* May 15, 1974, has no bearing on our determination, but the majority decision means that the opportunity for intelligent legal care planning, which we by-pass, becomes bogged down in an ethical[4] debate concerning the attorney-client relationship vis à vis " open " vs. " closed " plans or in the legislative arena on economic aspects to the detriment of sound judicial practice.

An idea whose time has come should not be suspended so that footnotes can be added. New York County Lawyers has presented a sound plan on a limited experimental basis of benefit to the public and the legal profession and within the scope of the power and the duty of this court, and their petition should be granted.

---

2. See *Young Lords Party* v. *Supreme Court* (328 F. Supp. 66 [S. D. N. Y., 1971, 3-Judge court], 360 F. Supp. 581 [S. D. N. Y., 1973], affd. without opn. 414 U. S. 1088 [1973]).

3. See N. Y. L. J., July 11, 1974, p. 1, col. 5 and p. 5, col. 1).

4. See Amendments to the Code of Professional Responsibility adopted by the House of Delegates of the American Bar Association effective March 1, 1974 regarding a " qualified legal assistance organization ", e.g., DR 2-103(D) DR 2-104 (A)(3) presently the subject of public hearings by the New York State Bar Association's Committee on Professional Ethics.

McGIVERN, P. J., MARKEWICH, MURPHY and STEUER, JJ., concur in *Per Curiam* opinion; KUPFERMAN, J., dissents in an opinion.

Applications pursuant to rule 608 of the Rules of the Appellate Division, First Department, for approval of plans establishing prepaid legal services denied.